**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CHERIE VANOVEN, On Behalf of Herself**
**And All Other Similarly Situated**                                              **PLAINTIFF**

**v.**                          **Case No. 4:10CV0158 BSM**

**CHESAPEAKE ENERGY CORPORATION et al.**                      **DEFENDANT**

<u>**ORDER**</u>

Defendants move, in two identical motions [Doc. Nos. 15, 17], to dismiss all claims

against Chesapeake Energy Corporation; Chesapeake Energy Marketing, Inc.; Chesapeake

Midstream Gas Services, L.L.C.; Chesapeake Operating, Inc.; BP America, Inc.; BP America

Production Company; BP Energy Company; BP Inc.; and Vernon L. Smith and Associates,

Inc. ("Smith and Associates"). Defendants also move to dismiss plaintiff's alter ego, joint

venture, unauthorized practice of law, unconscionable contract, Arkansas Deceptive Practices

Act, prudent operator, good faith and fair dealing, unjust enrichment, equitable accounting,

and treble damages claims. Plaintiff objects to the motions to dismiss. As set forth below,

defendants' motion to dismiss claims against the Chesapeake defendants is granted in part

and denied in part; defendants' motion to dismiss claims against the BP defendants is granted

in part and denied in part; and defendants' motion to dismiss Smith and Associates is

granted.

## I. FACTUAL BACKGROUND

Plaintiff, Cherie Vanoven, filed suite alleging a smorgasbord of claims against the

various Chesapeake and BP defendants and seeking the certification of two classes. On

behalf of class I, Vanoven claims that mineral leases obtained by the Chesapeake and BP defendants are voidable as unconscionable contracts. On behalf of class II, Vanoven claims that defendants have consistently underpaid royalties on their oil and gas leases. Vanoven requests damages, including treble damages, recision of the leases, and an equitable accounting.

Vanovens's allegations are essentially that the defendants have engaged in a variety of deceptive or fraudulent practices to deprive her of the royalties she is due under her oil and gas lease with Chesapeake Operating, Inc. She contends that the Chesapeake and BP defendants have improperly deducted processing fees, failed to pay royalties for condensate, engaged in self-dealing with affiliates to lower the royalty payments, improperly deducted in-kind gas used in gathering, improperly deducted lost gas, and improperly deducted the costs for placing gas in a marketable condition. She further contends that Smith and Associates negotiated and acquired these leases through the unauthorized practice of law and that the resulting leases are unconscionable adhesion contracts that should be declared void.

## II. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain sufficient facts which, if accepted as true, state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where the plaintiff pleads factual content that would allow a court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III. DISCUSSION

A.   <u>Motion to Dismiss Chesapeake Defendants</u>

Defendants move to dismiss Vanoven's claims against all Chesapeake defendants other than Chesapeake Exploration L.L.C. and Chesapeake Operating, Inc., arguing that her complaint has failed to set out specific factual allegations against any individual Chesapeake defendant. Defendants apparently admit the involvement of Chesapeake Exploration and Chesapeake Operating in the disputed leases and royalty payments and thus except these entities from this general motion to dismiss.

Vanoven's complaint, however, does not rely exclusively on specific allegations against particular Chesapeake defendants. Instead, the complaint alleges that the various Chesapeake Energy defendants act as alter egos of one another in order to "thwart discovery, shield liability, and provide an additional layer of secrecy and complexity to deter royalty owners from obtaining full compensation." Compl. ¶ 69. The complaint also alleges that Chesapeake Energy uses its affiliates to manipulate oil prices, which adversely effects the proceeds paid to individual royalty owners. *Id*. ¶ 63. Both of these allegations consider the corporate structure of the Chesapeake defendants as a whole, rather than the isolated liability of any particular entity. The issue is therefore whether plaintiff has pled sufficient facts to set forth a claim that the Chesapeake defendants acted in concert to shield the corporation from liability and thwart discovery or to fraudulently prevent royalty owners from obtaining the compensation they are due.

Defendants, of course, did not overlook these issues. They argue that the complaint fails to set forth sufficient facts to justify disregarding corporate separateness. They also argue that plaintiff's allegations that the Chesapeake Corporate structure is used to "thwart discovery, shield liability, and provide an additional layer of secrecy and complexity to deter royalty owners from obtaining full compensation" should be disregarded under the *Iqbal* approach. This approach allows the district court to disregard allegations contained in the complaint that are nothing more than unsupported legal conclusions. *Iqbal*, 129 S. Ct. at 1950.

Vanoven, however, sets forth specific factual allegations that the Chesapeake defendants engaged in fraudulent conduct. Her complaint alleges that defendants take improper deductions from her royalty payments, fail to pay her for condensate, sell her gas to their affiliates at an artificially low price, improperly deduct in-kind gas to alter the volume, and improperly deduct in-kind costs. Compl. ¶¶ 48–67. These allegations are not mere recitations of the legal cause of action for fraud; they are allegations of specific conduct used to defraud plaintiff and the other lessors of their royalty payments. *Id.* ¶ 63.

Vanoven also alleges, based on a Form 10-Q filed with the SEC, that Chesapeake Energy Corporation is the parent company of Chesapeake Energy Marketing, Inc.; Chesapeake, Exploration, L.L.C.; Chesapeake Midstream Gas Services, L.L.C.; and Chesapeake Midstream Operatring, L.L.C. She also alleges that Chesapeake Operating is a wholly owned subsidiary of the Chesapeake Energy Corporation. *Id.* ¶¶ 8–13. As additional

support for these allegations, Vanoven pled facts that show virtually all of these corporations are headquartered at the exact same address in Oklahoma City and are cross-managed by one another. *Id.*

Strangely, despite the allegations contained in her complaint, Vanoven contends in her response that she is not trying to pierce the corporate veil but rather wants to hold each of the Chesapeake defendants liable for its own acts. Pl.'s Resp. 21. This contention appears to directly contradict the pleadings. Count I of Vanoven's complaint asks for a judicial determination that the various Chesapeake defendants "are in fact the alter ego of one another." *Id.* ¶ 69. This sort of judicial determination requires a piercing of the corporate veil. *See Constellation Dev. Corp. v. Dowden*, 66 F.3d 931, 937 (1995). Vanoven does, however, point out in her response that she has alleged the elements required to pierce the corporate veil. As such, it does not appear that she has abandoned this argument.

Although the complaint fails to set out specific factual allegations specifying exactly what constituent part of her harm each particular Chesapeake defendant has perpetrated, because Vanoven has plead sufficient facts to make out a plausible claim that the Chesapeake defendants act variously in concert to perpetrate fraud, she has sufficiently made out a claim against each individual defendant, at least for the purposes of a motion to dismiss. No matter what specific legal terminology is applied to characterize Vanoven's allegations, the real issue is whether she set forth a plausible cause of action and provided sufficient facts to support that action. Vanoven's complaint needs only to show the plausibility of relief. Here,

she has plausibly alleged that she suffered legally compensable harm from Chesapeake and its various affiliates using their corporate structure to defraud her of royalty payments, deny her information, and shield itself from liability. For these reasons, defendants' motion to dismiss the various Chesapeake defendants is denied.

B.    Motion to Dismiss BP Defendants

Defendants also move to dismiss all BP defendants, stating that Vanoven has pled only legal conclusions without any specific factual allegations. Defendants also argue that Vanoven has failed to establish the elements of a joint venture between the Chesapeake defendants and the BP defendants because she has demonstrated neither a common object and purpose for the undertaking nor an equal right to direct and govern the movements of each other in respect to the common object and purpose. *Lovell v. Brock*, 952 S.W.2d 161, 163–64 (1997).

Vanoven has pled sufficient facts to set forth a plausible claim that the BP defendants underpay royalty owners. Compl. ¶¶ 54–67. In particular, paragraph 63 of the complaint alleges specific and plausible facts which, if taken as true, would give Vanoven a cause for relief against the BP defendants. These facts include: (1) BP defendants improperly deducted processing fees, (2) BP defendants failed to pay royalties for condensate, (3) BP defendants engaged in self-dealing with affiliates to lower the royalty payments, (4) BP defendants improperly deducted in-kind gas used in gathering and lost gas, and (5) BP defendants improperly deducted costs for placing gas in a marketable condition. *Id.* ¶ 63. These facts set

out a plausible cause of action against the BP defendants. As such, defendants' motion to dismiss the BP defendants is denied.

Vanoven has not, however, pled facts to support a joint venture between Chesapeake and BP. The only factual allegation she offers is BP's purchase of a twenty-five percent share in Chesapeake's mineral leases, gas wells, and other assets in the Fayetteville Shale Play. She does not allege a common purpose or an equal right to direct and govern the movements in the joint venture. As such, Vanoven's joint venture claims are dismissed, and she may not rely on an alleged joint venture between BP and Chesapeake to support her claims.

C.     Motion to Dismiss Smith and Associates

Defendants move to dismiss all claims that Smith and Associates is or has been engaged in a joint venture with the Chesapeake defendants. Defendants argue that plaintiff has failed to show either a common object and purpose for the undertaking or an equal right to direct and govern the movements of each other in respect to the common object and purpose. *Lovell*, 952 S.W.2d at 163–64. Vanoven's complaint contains no allegations and no facts to support the conclusion that Smith and Associates has an equal right to direct and govern the actions of the Chesapeake defendants with respect to any alleged joint venture. As such, defendants motion to dismiss the allegations that Smith and Associates is engaged in joint venture with the Chesapeake defendants is granted.

Defendants also move to dismiss Vanoven's claim that Smith and Associates has engaged in the unauthorized practice of law. They argue that Smith and Associates is not

"engaged in the practice of law" as defined by the Arkansas Supreme Court and that plaintiff lacks standing to raise the issue.

It is clear that under Arkansas law a person who appears in court "for the purpose of transacting business with court in connection with any pending litigation" or "invokes the process of the court in any matter pending before it" is practicing law. *Arkansas Bar Ass'n v. Union Nat'l Bank*, 273 S.W.2d 508, 411 (1954). It is likewise clear that the term "engaged in the practice of law" also encompasses a broad range of legal services rendered outside the courts. *Undem v. State Board of Law Examiners*, 587 F.2d 563, 568. Yet, in the context of services rendered outside the courts, the limits of exactly what constitutes the practice of law escape a precise definition. *Id.*

In *Arkansas Bar Association v. Block*, 323 S.W.2d 912, 916 (1959), the Arkansas Supreme Court held that the preparation of leases, among other instruments, constituted the practice of law in the state of Arkansas. But a few years later, in *Creekmore v. Izard*, 367 S.W.2d 419, 423 (1963), the Court modified the rule of *Block*, holding that a real estate broker, acting for a person who has declined to employ a lawyer, is permitted to fill in the blanks in simple standardized real estate forms where the forms have been approved by a lawyer. From a survey of the cases after *Izard*, however, it does not appear that the Arkansas Supreme Court has substantially expanded the circumstances under which a non-lawyer may prepare legal documents. As such, it appears that Vanoven has pled facts that may suggest Smith and Associates is engaged in the unauthorized practice of law.

Vanoven has not, however, pled facts that make out a plausible claim to show how she has been injured by Smith and Associates' alleged unauthorized practice of law. Vanoven's main allegation against Smith and Associates is that the contracts it negotiated are unconscionable, but she presents no facts to support this claim and points to no provisions in the contracts that would make them unconscionable. Additionally, Vanoven alleges no facts that would support the conclusion that Smith and Associates failed to abide by the normal rules of professional conduct a lawyer would be held to when dealing with an unrepresented individual. *See* Rules 4.1, 4.3 of the Arkansas Rules of Professional Conduct.

Vanoven's allegations that the Chesapeake and BP defendants have defrauded her of the royalties to which she is entitled cannot be fairly traced to Smith and Associates. Here, her allegations are not that the contract itself imposes unconscionable terms, but that the Chesapeake and BP defendants have denied her what she is entitled to both by law and under the contract. This injury is not traceable to the formation of the contract, but instead relates to the post-contractual conduct of the BP and Chesapeake defendants.

Without showing an injury that is fairly traceable to the conduct of Smith and Associates, Vanoven does not present sufficient facts upon which to sue. *Northeastern Florida Contractors v. Jacksonville*, 508 U.S. 656, 663–64 (1993). As such, her unauthorized practice of law claim against Smith and Associates is dismissed.

D.    Unconscionable Contract

Vanoven points to no terms or clauses in the contracts that would make them

unconscionable. Her allegations address a purported failure to appropriately pay royalties. Because Vanoven has not alleged facts that would show how the contracts themselves are unconscionable, the motion to dismiss the unconscionability claim is granted.

E.     Arkansas Deceptive Trade Practices Act

Defendants argue that the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. §§ 4-88-101 *et seq*, protects only consumers and does not apply to the facts as alleged by the plaintiff. This point of view, however, was rejected in *Electrocraft Ark. v. Super Electric Motors*, 2009 U.S. Dist. LEXIS 120183; 70 U.C.C. Rep. Serv. 2d (Callaghan) 716 (E.D. Ark. Dec 23, 2009) in which Judge Susan Webber-Wright recognized that the ADTPA specifically states that it was designed to protect the legitimate business community as well as consumers.  Additionally, the act provides a cause of action to a "person" suffering damage from an unconscionable, false, or deceptive act or practice. Ark. Code Ann. §§ 4-88-105(c), 4-88-113(f). Within the context of the ADTPA, person is defined in Ark. Code. Ann. § 4-88-102(5) as an "individual, organization, group, association, partnership, corporation, or any combination of them." Accordingly, by its plain terms, the ADTPA protects the business community at large, providing its members with a broad cause of action to remedy harms suffered from deceptive or unconscionable conduct.

Moreover, as *Electrocraft* points out, the Arkansas Supreme Court has applied the ADTPA in a nontraditional consumer situation. 2009 U.S. Dist. LEXIS 120183, at *23 FN 6. In *Baptist Health v. Murphy*, 225 S.W.3d 800 (2006), the Court affirmed a trial court that

held that Baptist Health's economic credentialing policy violated the ADTPA because it denied professional appointments and clinical privileges to doctors who held investments in competing hospitals. Of course, the doctors receiving ADTPA protection were not consumers.

Accordingly, Vanoven, as a member of the business community, may prevail if she can show that defendants engaged in an unconscionable, false, or deceptive act or practice. Here the specific factual allegations she makes against the Chesapeake and BP defendants include: (1) improper deductions of processing fees, (2) failure to pay royalties for condensate, (3) self-dealing with affiliates to lower the royalty payments, (4) improper deductions of in-kind gas used in gathering and lost gas, and (5) deductions for placing gas in a marketable condition. Compl.¶ 63. Vanoven also alleges that the defendants use secret accounting procedures to fraudulently make these deductions and refuse to allow plaintiff or other lessors access to their accounting information. Compl. ¶¶ 48, 61. Accepting these factual allegations as true, Vanoven has set out a cause of action under the ADTPA. The motion to dismiss the Chesapeake and BP defendants is denied.

The Arkansas Supreme Court has, however, specifically held that the ADTPA does not apply to the unauthorized practice of law. *Preston v. Stoops*, 285 S.W.3d 606, 609 (2208). Aside from allegations that Smith and Associates engaged in the unauthorized practice of law, Vanoven has presented no factual allegations against Smith and Associates that would indicate it violated the ADTPA. The motion to dismiss the ADTPA claim against

Smith and Associates is granted.

F.     Prudent Operator Standard

Defendants move to dismiss Vanoven's claim under the prudent operator standard codified in Ark. Code Ann. § 15-73-207. That statute requires a mineral lessee to perform the duties of the lease in good faith and operate the leased material estate as a prudent operator for the mutual benefit of the mineral lessor and mineral lessee. Again, plaintiff alleges that the defendants have, in bad faith, failed to pay her the proper royalties. These allegations make out a *prima facie* case under the prudent operator standard.

G.     Breach of Implied Covenants of Good Faith and Fair Dealings

Defendants correctly point out that Arkansas does not recognize a tort of breach of covenants of good faith and fair dealing. *Preston v. Stoops*, 285 S.W.3d 606, 609–610 (2008). Because this allegation does not state a claim upon which relief can granted, it is dismissed.

H.     Unjust Enrichment

The doctrine of unjust enrichment generally does not apply where there is a binding, legal contract. *Varner v. Peterson Farms*, 371 F.3d 1011, 1018 (8th Cir. 2004). Vanoven alleged that she entered a valid contract with at least one of the Chesapeake defendants. The defendants, however, claim that Vanoven only had a valid contract with Chesapeake Operating, Inc. Even with this contract, Vanoven would still have a claim against the other BP and Chesapeake defendants.

12

I.     Equitable Accounting

Equitable accounting is an equitable remedy available only where there is no remedy available at law. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78 (1962). In order to maintain an action for equitable accounting on a suit cognizable at law, such as this one, Vanoven must show that "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Id*. Vanoven has not pled that an adequate remedy is unavailable at law or that the accounts are so complicated that they can only be sorted out by a court in equity. Therefore, this claim is dismissed.

J.     Treble damages

Ark. Code Ann. 15-74-708 provides for treble damages in certain instances where leaseholders wrongfully deprive the royalty owners of their interest. As set forth above, Vanoven has pled facts setting out a plausible claim that the defendants have used a variety of tactics to wrongfully deprive her of the royalty payments associated with her lease interests. The motion to dismiss this claim is denied.

## IV. CONCLUSION

For the reasons stated herein, the motion to dismiss the Chesapeake and BP defendants generally is DENIED. The motion to dismiss claims of a joint venture is GRANTED. The motion to dismiss Smith and Associates is GRANTED. The motion to dismiss the unconscionable contract claim is GRANTED. The motion to dismiss the ADPTA claim is DENIED with respect to BP and Chesapeake but GRANTED with respect to Smith

and Associates. The motion to dismiss the prudent operator claim is DENIED. The motion

to dismiss the covenant of good faith and fair dealing claim is GRANTED. The motion to

dismiss the unjust enrichment claim is DENIED. The motion to dismiss the claim for an

equitable accounting is GRANTED. The motion to dismiss the claim for treble damages is

DENIED.

   IT IS SO ORDERED this 22nd day of March, 2011.

                 _____
                 UNITED STATES DISTRICT JUDGE